UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VALERIE PREVOST,<br>    *Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 4:23-CV-4115 |
| | §<br>§ | |
| CITY OF HOUSTON,<br>    *Defendant*. | §<br>§ | |

## MEMORANDUM AND RECOMMENDATION

This employment discrimination and retaliation case in which Plaintiff is proceeding pro se is before the Court on Defendants' Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment.[1]    ECF 80; ECF 82.   Having considered the parties' submissions and the law, the Court recommends that Defendant's Motion be GRANTED and Plaintiff's Motion be DENIED.[2]

## I.    Background

Plaintiff Valerie Prevost was employed as an administrative specialist in the City of Houston's Office of Emergency Management (OEM) from 1993 until her retirement effective August 31, 2022.  ECF 80-5 at 9; ECF 88 at 2.  Her office was located at the Houston Emergency Center (HEC) building at 5320 N. Shepherd Dr.

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  ECF 4.

[2] The Court has reviewed and considered all arguments and issues raised by the parties, whether explicitly addressed herein or not.

ECF 80-5 at 17.  Plaintiff began suffering from physical disabilities in 2017. ECF 80-5 at 38. Plaintiff has multiple complaints about her employment with the City from 2017 and up to the time of her retirement.  The Court sets out below, in roughly chronological order, the issues raised by Plaintiff in this case:

*Job Reclassification.*   Starting in 2019, Plaintiff began requesting a job reclassification.  She contends that her job classification was incorrect because it did not align with the job duties she actually was performing.  Her 2019, 2020, and 2021 reclassification requests were denied by Deputy Directors Rick Flanagan, Nickea Bradley, and Thomaz Munoz, respectively.

*Computer Sabotage.*   Plaintiff contends that she began noticing suspicious computer activity in 2020 "when discriminatory African American female Nickea Bradley, Former Deputy Director started."   ECF 88 at 2.  Plaintiff contends that Bradley fostered a discriminatory and hostile environment in the OEM and often made derogatory remarks about Plaintiff's age.  *See* ECF 82 at 3.  Plaintiff believes that an unknown person or persons tampered with her City-issued laptop, deleting and altering her emails, and stealing documents.  *See e.g.* ECF 90 at 14-23; ECF 80-5 at 21, 23, 35.  The implication is that Bradley is somehow responsible for someone tampering with Plaintiff's computer. *See* ECF 100 at 2 (stating that Bradley discriminated against Plaintiff and "Hamilton Howard, OEM IT administrator, gave

Bradley access to Plaintiff's network profile."). Bradley resigned from the City effective July 19, 2021. ECF 80-10.

The record indicates these issues began after Plaintiff received a new laptop in 2019 and her old emails were no longer saved on the laptop. ECF 90 at 15. Plaintiff submitted a ticket to the IT service desk on August 5, 2020 seeking help retrieving her emails. *Id.* An IT representative informed Plaintiff that all emails from the prior two years should be accessible if she logs in with her "0365 credentials," but Plaintiff wanted to retrieve emails from 2014-2018. *Id.* at 17-18. The City contends that an IT investigation into Plaintiff's computer issues concluded the problems were the result of "user error," not hacking or intentional acts by other persons, but Plaintiff insists it was "an inside employee cyber-attack against Plaintiff." ECF 81-10; ECF 88.

***Grant Administrator Position.*** Plaintiff applied for a position as a grant administrator in February 2021 and was not selected. ECF 81-2; ECF 80-5 at 27. Plaintiff filed a grievance alleging age and disability discrimination on March 26, 2021. ECF 81-3. Because the grievance alleged discrimination it was referred to City's Office of Inspector General (OIG) for an investigation. ECF 81-4; 81-5. The OIG informed Plaintiff on August 21, 2021 that "[b]ased on the differences between the educational credentials and the professional experience between you and the successful candidate for the [grant administrator] position" the OIG did not sustain

her allegations of discrimination.  ECF 81-9.  Plaintiff's grievance continued through the multi-step review process and after a hearing on January 12, 2022 the Grievance Review Committee upheld the OIG's conclusion.  ECF 80-9.

*April 2021 Performance Improvement Discussions (PIDs).*  While her OIG Complaint was pending, on April 12, 2021, Plaintiff had a PID meeting with her direct supervisor, Vlad Ibarra.  Ibarra drafted a PID Worksheet after the meeting dated April 16, 2021 but neither Ibarra nor Plaintiff signed it.  ECF 80-15.  The draft PID Worksheet was marked as addressing a performance issue due to "cancellation of our quarterly goals meeting and the confrontational email tones displayed."  *Id.* The April 16, 2021 PID also noted that Plaintiff repeatedly brought "the Lord Jesus Christ" into conversations.  *Id.*  Plaintiff disagreed with Ibarra's statements and submitted a response stating that Ibarra insulted her religion and violated her First Amendment Rights by telling her to stop talking about Jesus Christ and that she had to pray during their meeting due to the "hostile environment" he created.  *Id.*  Ibarra then drafted and signed an April 26, 2021 PID marked as addressing a behavior issue regarding Plaintiff's "cancellation of our quarterly goals meeting and the unacceptable communications you provided on April 12."  ECF 81-17.  The April 26, 2021 PID does not mention religion.  Plaintiff refused to sign the April 26, 2021 PID.  *Id.*

*June 10, 2021 Fall.*  At some point in 2020, a construction project started at the HEC building to create more office space.  As a result, Plaintiff was required to move offices.  ECF 80-5 at 15-16.  Outside of her office was a large space that was only occupied during an "activation."  *Id.* at 16.  A leaky roof in the area made the carpet outside Plaintiff's office wet.  *Id.*  On June 10, 2021, Plaintiff slipped and fell on the wet carpet outside her office door.  *Id.*; ECF 90 at 1-5.  Plaintiff did not receive medical treatment at the scene but testified that she received medical treatment at an urgent care center that day or the day after.  ECF 80-5 at 12-13; ECF 90-1 at 2.

*Gate Access and October 8, 2021 Fall.*  After Plaintiff began suffering from physical disabilities in 2017, her then-supervisor, Joe Laud, gave permission for Plaintiff's husband to drive through the HEC gate to pick up and drop off Plaintiff close to the building entrance. This procedure remained in place without issue until September 23, 2021, when a security breach prompted stricter protocols.  *See* ECF 80-12.  Laud informed Plaintiff that her husband would have to provide his driver's license and other identifying information in order to continue driving through the gate.  *Id.*; ECF 80-5 at 20-22.  Plaintiff was hesitant to provide personal information to the guards and insists that it was not necessary because she had been granted access permission years before. *Id.*  Plaintiff told Laud that she would not provide the requested information again.  ECF 80-5 at 22.  Plaintiff contends that after September 23, 2021, the City forced her walk to and from the building despite her

documented disability. *Id.* On October 8, 2021, Plaintiff's legs gave out as she was leaving the building and she fell. ECF 80-5 at 7; ECF 90 at 5-7. Paramedics arrived at the scene and Plaintiff declined transportation to the hospital. ECF 90 at 7. Plaintiff's husband followed the protocol to provide identification and was granted access to drive through the front gate to pick up Plaintiff. ECF 80-14 at 2.

On November 7, 2021, Plaintiff sent an email to Chief George Buenik complaining about harassment, discrimination, and retaliation by Joe Laud relating the gate issue, and by Thomas Munoz, Vlad Ibarra, Robert Mock, and Mark Rayne related to Covid-19 compliance. ECF 80-5 at 33-34. The matter was referred to the OIG, which found no discrimination. *Id.*; ECF 80-19. The OIG noted that Plaintiff had not submitted the Medical Questionnaire required to request an ADA accommodation. *Id.*

***Plaintiff's Retirement.*** Plaintiff submitted her resignation to the City on May 22, 2022 informing the City of her intent to retire as of August 31, 2022. ECF 80-5 at 8-9; ECF 80-8. Plaintiff testified that she resigned "mainly for retirement and two other issues: job reclassification and because my health was declining by specifically going back and forth," referring to the walk to and from the building. *Id.* However, she was able to work between May 22 and August 31, 2022. *Id.* at 7.

On August 25, 2022, Plaintiff received a medical opinion from a neurologist, Dr. Fayaz A. Faiz, that she was completely disabled and unable to work. ECF 80-5

at 7; ECF 82-9. Plaintiff applied for Social Security Disability benefits and in February 2023 the Social Security Administration found her 100% disabled and entitled to benefits. *Id.*

***This Lawsuit.*** Plaintiff filed an EEOC charge of age, disability, and religious discrimination and retaliation on December 22, 2022, which she amended on January 1, 2023. ECF 80-6; ECF 80-7. Both the original and amended charges allege that Plaintiff was forced to retire due to being denied gate access for drop off and pick up at the front of the building. *Id.* Plaintiff's EEOC charge does not raise any of the other issues discussed above. *See id.* The EEOC issued a Notice of Right to Sue on July 24, 2023, and Plaintiff filed this lawsuit on October 19, 2023. ECF 1. Plaintiff's Complaint raises the gate issue, as well as the other issues discussed above. Both parties now seek Summary Judgment on all of Plaintiff's claims for age, disability, and religious discrimination and retaliation.

## II.     Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving

7

party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted).

When parties file cross motions for summary judgment, each motion "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of

law." *Shaw Constrs. v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004). Only "[i]f there is no genuine issue and one of the parties is entitled to prevail as a matter of law" can summary judgment be entered on cross motion. *Id.*

The Court applies the familiar *McDonnell Douglas* burden-shifting framework when deciding motions for summary judgment in discrimination cases based on circumstantial evidence. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004) (Title VII); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340-41 (5th Cir. 2019) (ADA); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (ADEA). "To survive summary judgment under *McDonnell Douglas,* the plaintiff must first present evidence of a prima facie case of discrimination." *Davis*, 383 F.3d at 317 (citing *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002). If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer. *Id.* The employer must then articulate a legitimate, nondiscriminatory reason for the underlying employment action. *Id.* If the employer can state a legitimate reason for its action, the inference of discrimination disappears, and the burden shifts back to the plaintiff to present evidence that the employer's proffered reason was merely pretextual. *Id.*

## III.   Analysis

The Court first addresses Defendant's Motion for Summary Judgment before turning to Plaintiff's cross-motion. Defendant raises several grounds for summary

dismissal of this case.   First, Defendant argues that many of Plaintiff claims are barred by her failure to exhaust her administrative remedies.   Second, Defendant argues that many of Plaintiff's claims are barred by the statute of limitations.   Third, to the extent any claims remain, Defendant argues they should be dismissed because Plaintiff (i) cannot show constructive discharge; (ii) cannot show a prima facie case; and (iii) cannot show that the City's legitimate reasons for its actions are pretext for discrimination or retaliation.   Plaintiff's Response rehashes the allegations of her Complaint.  *See* ECF 88.  Plaintiff's Response does not directly address Defendant's arguments or cite any legal authority in her favor.  *See id.*

**A.    Plaintiff's claims that were not raised in her December 22, 2025 EEOC charge must be dismissed for lack of exhaustion.**

Many of Plaintiff's claims are barred by her failure to exhaust administrative remedies.   A plaintiff is required to exhaust her administrative remedies before pursuing Title VII, ADA, and ADEA claims in federal court.  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (Title VII); *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir. 1996) (ADA); *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010) (ADEA).

A plaintiff exhausts administrative remedies by filing a charge with the EEOC and receiving a right to sue letter.  *Taylor*, 296 F.3d at 379.  A Plaintiff's claims are are limited to those claims like or related to allegations contained in the charge and growing out of such allegations.  *Stingley v. Watson Quality Ford, Jackson, MS*, 836

F. App'x 286, 291 (5th Cir. 2020) (citing *McClain v. Lufkin, Indus., Inc.*, 519 F.3d 264, 272-73 (5th Cir. 2008)).   No magic words are required, and the Plaintiff's administrative charge should be read "somewhat broadly," however, it must be read in light of "what EEOC investigations it can reasonably be expected to trigger." *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006).

In this case, Plaintiff's December 22, 2022 EEOC charge contained the following allegations:

> On or about August 31, 2022, I was forced to retire.  Respondent is fully aware of my disability as my accommodation is on file.  There is a policy (policy 100-4) in place to have employees dropped off in front of the building as long as the request was made and approved.  I complied and also filed my accommodation with Respondent. Suddenly, I was told by Allied Security I could no longer be dropped off at the front and was forced to be dropped off at the gates and walk to the building.  I had an incident and fell.  I filed a report with Respondent and nothing was done to correct and/or make appropriate changes.  I complained to my supervisor, manager, Deputy Director, and OIG. I was told to complete a medical questionnaire.  I knew that was not required since I had approval and informed Respondent of prior approval.  To prevent further injury to myself and because Respondent did nothing to correct this mistake, I was forced to resign.  I believe that I was retaliated and discriminated against because of my Disability, in violation of the Americans with Disabilities Act, Amendments of 2008 (ADAAA), as amended; Age (63) in violation of Age Discrimination in Employment Act of 1967 (ADEA), as amended; and Religion (Christian), in violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF 80-6.  The only act of discrimination or retaliation Plaintiff identified in her

11

EEOC charge is the issue with access to the gate.[3]  The charge does not even allude to other acts of discrimination or retaliation.  The other allegations Plaintiff raises in this lawsuit—such as her computer issues, her job classification, her failure to be promoted, and being written up on PID worksheet—are not "like or related to" her allegations that her husband was denied gate access and nothing in the charge would have triggered an EEOC investigation into such allegations.  Therefore, Plaintiff's claims based on any act other than construction discharge due to denial of gate access must be dismissed for lack of exhaustion.

**B.**    **Plaintiff's claims based on actions that occurred prior to February 25, 2022 are barred by the statute of limitations.**

A plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act.  *Fort Bend County, Texas v. Davis*, 587 U.S. 541, 544 (2019) (Title VII); *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002) (ADA). *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 384 (5th Cir. 2002).  It is undisputed that Plaintiff filed her EEOC charge on December 22, 2022. ECF 80-5 at 8; ECF 80-6.  Plaintiff may proceed only on claims based on discriminatory acts that occurred after February 25, 2022.  Thus, all of Plaintiff's

---

[3] Plaintiff's EEOC charge mentions religious discrimination, but her factual allegations relate only to gate access and are in no way connected to religion.  ECF 80-6.  To the extent the mention of freedom of religion in the EEOC charge can be interpreted as raising Plaintiff's complaints about her First Amendment rights being violated in connection with the April 2021 PID, such claims are time-barred as discussed in Section III.B.

claims except for her alleged constructive discharge due to the City's continuing refusal to allow her husband to enter the HEC gate to pick up and drop off Plaintiff at the front door of the building are time-barred and must be dismissed with prejudice.

### C. Plaintiff cannot meet her burden to show a prima facie case of disability, age, or religious discrimination, or retaliation, based on the denial of gate access.

In order to make a prima facie case of discrimination under Title VII and the ADEA, Plaintiff must show she (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or other similarly situated employees were treated more favorably. *Ray v. Columbia Brazoira Indep. Sch. Dist.*, No. 24-20227, 2025 WL 1219191, at *5 (5th Cir. Apr. 28, 2025). The elements of a prima facie case of discrimination under the ADA are that Plaintiff: (1) has a disability or was regarded as disabled; (2) was qualified for the job; and (3) was subject to an adverse employment decision because of her disability. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340-41 (5th Cir. 2019).

The elements of a retaliation claim are the same under Title VII, the ADA, and the ADEA. Plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link between the adverse employment action and the protected activity. *Sherrod v. Am. Airlines, Inc.*, 132

13

F.3d 1112, 1122 (5th Cir. 1998) (ADA and ADEA); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (Title VII). In the retaliation context, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). A Plaintiff must show that the adverse action would not have been taken "but-for" the retaliation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Defendant's first argues that Plaintiff cannot show she was subjected to an adverse employment decision because she cannot meet the standards for constructive discharge. A constructive discharge occurs when a plaintiff shows that her working conditions were so intolerable that a reasonable employee would have felt compelled to resign. *Green v. Brennan*, 578 U.S. 547, 555 (2016).

Given Plaintiff's obvious physical disability and difficulty walking, the Court will assume for current purposes that Plaintiff has created a genuine issue of material fact as to her constructive discharge. In addition, Plaintiff does not need to prove constructive discharge for purposes of her retaliation claims, which require her to show only an adverse action that would have dissuaded a reasonable employee from engaging in protected activity. In this case, it is not necessary for the Court to make a definitive ruling on constructive discharge to rule on the pending summary judgment motions because Plaintiff cannot meet the causation element of a prima

14

facie case of discrimination or retaliation under Title VII, the ADA, or the ADEA based on the denial of gate access.

Taking all of the evidence in the light most favorable to Plaintiff, the record contains no evidence of a causal connection between the denial of gate access and Plaintiff's disability, age, religion, or protected activity. It is undisputed that Joe Laud gave Plaintiff the accommodation of having her husband enter the gate to pick her up and drop her off at the front of the building sometime in 2017. The record conclusively shows that the rules for gate access changed in September 2021. ECF 80-5 at 20-21; ECF 80-12. Joe Laud sent Plaintiff an email on September 23, 2021 informing her that she needed to give the guards her husband's name, license number, pictures of her and her husband's ids, vehicle make/model/color, and license plate. ECF 80-12 at 5-6. Plaintiff responded that she was already approved to go through the gate and has provided the requested information before. *Id.* at 5. She stated "[d]ue to hav[ing] so many different guard changes, we can't provide the license. We have been victims of identity theft, we don't give our information out unless we are doing business." *Id.* Plaintiff interpreted the request for the information again as an indication it had been lost and further stated "I am not willing to take that chance with the information being exposed. Since you are putting this mandate in place, I will figure out how to get to the gate to be picked up." *Id.* Laud explained that he was directed to ask for the information at that time because new

15

protocols were being implemented for all "staff who will be requesting approval for similar procedures for pickup/drop off to/from HEC." *Id.* at 4. Again, Plaintiff responded that she had previously provided the information and would not do it again because they lost it. *Id.* Again, she stated "since this is the new mandate, I will try to walk to the gate." *Id.* Plaintiff complained about the new protocols in a September 26, 2021 email asking why the guards did not still have her husband's the license plate information and asking why they are compromising her safety when she was not responsible for the recent security breaches. *Id.* at 3. After her October 8, 2021 fall, she sent another email to Joe Laud complaining about not being allowed to have her husband enter the gate despite having had approval for years, and expressing concern about giving personal information to guards that she doesn't know when the City has had the information for years. *Id.* at 2. Laud again explained that the new protocols were for the safety of everyone. *Id.* at 1.

In November, in an apparent attempt to be helpful, Chris Newsome, who had worked for the former HEC security provider, sent the information she had on file for Plaintiff's husband to Joe Laud. ECF 80-13 at 3. Because Newsome apparently did not have Plaintiff's permission to share the information, Laud told her to keep it confidential. *Id.* at 2. Plaintiff, having been copied on the email exchange, reiterated to Laud that she had already been approved for 6 ½ years due to her disabilities and stated "[i]t is apparent you are not trying to approve this request." *Id.* at 1. Plaintiff

16

clearly stated:  There is no further interest in clearance, please discard." *Id.*

The evidence summarized above shows that gate access was denied because Plaintiff refused to provide the necessary information for her husband to be approved for entry under new protocols that took effect in September 2021.  The fact that Plaintiff had previously submitted the required information and did not think it was fair to have to do it again does not make the City's requirement, which Plaintiff concedes was applied equally to all employees (ECF 80-5 at 15, 23), discriminatory or retaliatory.  Plaintiff's fervent belief that she was treated unfairly is not enough to create a genuine issue of material fact on her claims for violation of federal anti-discrimination statutes. *See E.E.O.C. v. Louisiana Off. of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) (recognizing that the Fifth Circuit has "consistently held that an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief.").  Plaintiff has no evidence that any younger person, non-disabled person, or non-Christian person was treated more favorably than she was treated.  In fact, Plaintiff's claim is that the City unfairly denied her husband gate access ***despite*** her documented disability, not ***because of*** her disability.

Finally, this is not a case about Defendant's failure to grant Plaintiff a reasonable accommodation under the ADA.  To succeed on a failure to accommodate claim, Plaintiff must show that:  (1) she is a qualified individual with a disability; (2) her disability and its consequential limitations were known to the

17

City; and (3) the employer failed to make reasonable accommodations for her known limitations. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 442 (5th Cir. 2017). "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Way v. City of Missouri City*, 133 F.4th 509, 517 (5th Cir. 2025) (citation omitted).  Here, it is undisputed that Plaintiff is disabled and the City knew it.  Plaintiff submitted medical evidence to support her request for intermittent FMLA leave, which the City granted.  ECF 82-5; ECF 82-6; ECF 82-7.  However, the record contains no evidence showing that Plaintiff submitted the required paperwork, including a Medical Questionnaire, to request an ADA accommodation.  *See* ECF 80-19.  As a corollary, the record contains no evidence showing that Defendant denied Plaintiff an ADA accommodation.  Indeed, the City expressly informed Plaintiff that she did not need an ADA accommodation for her husband to be granted gate access, she simply had to provide the requested identifying information.  ECF 80-5 at 25; ECF 80-14.  Plaintiff choose not to comply.

### D.    Plaintiff is not entitled to summary judgment.

Plaintiff's Motion for Summary Judgment is conclusory and does not explain how the attached evidence supports the elements of her Title VII, ADA, and ADEA claims.  *See generally* ECF 82: ECF 100; ECF 102.  For example, Plaintiff submits her employee evaluations showing she performed her job well, but the City has not disputed that Plaintiff was qualified for her position and there is no issue in this case

18

related to Plaintiff's job performance. ECF 82-1. Plaintiff submits evidence from the OIG's investigation of complaints against Nikea Bradley, but Bradley resigned on July 19, 2021 and this evidence is not relevant to Plaintiff's claims in this case. ECF 82-2. Further, the Court notes that the "Analysis" section of Plaintiff's Motion appears to have been pasted from an unrelated case and does not relate in any way to the specific claims and facts in this case. ECF 82 at 6.

In connection with Defendant's Motion for Summary Judgment, the Court considered the entire record in the light most favorable to Plaintiff and found that Plaintiff failed to meet her burden to create a genuine issue of material fact on required elements of her Title VII, ADA, and ADEA claims. It follows that Plaintiff cannot show that she is entitled to summary judgment in her favor on these claims.

## IV.    Conclusion and Recommendation

For the reasons discussed above, the Court RECOMMENDS that Defendant's Motion for Summary Judgment (ECF 80) be GRANTED and Plaintiff's Motion for Summary Judgment (ECF 82) be DENIED.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto.*

19

*Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on

other grounds.


Signed on May 20, 2025, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge